IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-02096-MSK-MJW

PATRICK DURAY PORTLEY-EL,

Plaintiff,

v.

ROBERT STEINBECK,
TIMOTHY RITTER,
CURTIS ROBINETTE, and
S. ADKINS,

Defendants.

---

**RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS (Docket No. 15)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**


This case is before this court pursuant to a Minute Order entered by District

Judge Phillip S. Figa on January 7, 2007. (Docket No. 8). Due to the recent passing of

Judge Figa, the case was reassigned to District Judge Marcia S. Krieger on January

15, 2008. (Docket No. 29).

**Plaintiff's Allegations**

The pro se incarcerated plaintiff alleges the following in his Prisoner Complaint

(Docket No. 3). During a disciplinary hearing at Arkansas Valley Correctional Facility

("AVCF") on July 24, 2003, the facility's disciplinary officer, defendant Adkins, read the

allegations contained in a Notice of Charges which alleged that on July 8, 2003, at

approximately 10:00 a.m. defendant Steinbeck received confidential information from several sources who presented corroborating evidence that the plaintiff was an active participant in a facility work stoppage on July 7, 2003, and that Tom Grebenc reported that the plaintiff did not report to work on July 7, 2003, at approximately 8:21 a.m. Adkins also added that the plaintiff was an enforcer in threatening other inmates. Adkins did not present any other testimony or evidence. Plaintiff objected to not receiving prior notice of the allegation that he was an enforcer because he did not have enough time to prepare for those accusations. The hearing officer, defendant Ritter, however, proceeded with the hearing after concluding that plaintiff did not have a right to receive confidential information prior to his hearing.

Plaintiff was given an opportunity to present his side of the matter, and he explained that he did report to work, but staff refused to allow him to work because there was no movement and the unit was on lock-down for security reasons. In addition, plaintiff explained that after learning of several beatings, plaintiff stood in the middle of his pod and yelled that if anyone jumped on any blacks for going to work, that they would have problems with him.

Ritter found plaintiff not guilty of failure to work but found plaintiff guilty of advocating/creating facility disruption based solely on the written statement of Steinbeck in the Notice of Charges and plaintiff's statement, "If anyone touches a Black, they will have to deal with me." Ritter made no determinations concerning the reliability of the confidential information.

Plaintiff appealed, citing a procedural violation with respect to confidential

information, inconsistent findings of fact, and an absurd interpretation of his statement. On August 8, 2003, defendant Robinette upheld Ritter's finding of guilt, finding that there were no procedural violations and that the confidential information, which was never evaluated, was determined to be reliable.

On October 8, 2003, plaintiff filed a Rule 106(a)(4) motion in Crowley County District Court. On April 25, 2006, the state court found there was no competent evidence in the record or presented to support a finding of guilt and that the Colorado Department of Corrections ("CDOC") had grossly abused its discretion and exceeded its jurisdiction. Therefore, Ritter's findings were set aside, and the conviction was to be expunged.

Plaintiff raises the following three claims for relief.

**Claim One.** Plaintiff was denied fundamental fairness and equal protection during his hearing and administrative appeal when he was not apprised of the confidential information as required by the CDOC's administrative regulations (AR 150-01 § IV E3k) and Form 150-1A, § 3, Summary. Adkins read the Summary contained in the Notice of Charges, which included mention of confidential information, without providing plaintiff with even a general description of such information, which violated the Code of Penal Discipline ("COPD") procedures and due process. The confidential information was not taken under oath and was not recorded on audio tape or by sworn statement in confidence by the disciplinary officer. In addition, there is no evidence in the record that Ritter evaluated that confidential information before its introduction to determine reliability. Adkins proceeded with the hearing in spite of plaintiff's objection

that he needed more time to prepare a defense.  Robinette upheld Ritter's finding of guilt based on the determination that the confidential information was reliable.

Steinbeck conspired (in violation of 42 U.S.C. § 1985(3)) to deprive plaintiff and several other "influential" offenders of due process and equal protection by knowingly introducing false testimony to ensure a conviction.   Adkins knowingly participated in the conspiracy by knowingly presenting fabricated confidential information which went unevaluated and undisclosed as part of the conspiracy.  Ritter and Robinette were aware of the § 1985(3) conspiracy and did nothing to stop it but joined the conspiracy in violation of 42 U.S.C. § 1986.  Each defendant violated plaintiff's Fourteenth Amendment rights and § 25 of the Colorado Constitution.

**Claim Two.**  Plaintiff was capriciously denied due process and his Eighth Amendment rights were violated when he was punished for sixty days without a procedurally-proper hearing and without any competent evidence to find guilt and impose punishment.  No additional evidence or testimony was given at the hearing; only the Notice of Charges was read, with the additional statement that plaintiff was an enforcer in that he threatened and beat up other inmates who reported to work. Despite the new allegation that plaintiff was an enforcer, plaintiff was not permitted additional time to prepare his defense.  Furthermore, the finding of guilt was based in part on plaintiff's statement at the hearing, but when looked at as a whole, plaintiff's statement was exculpatory, not inculpatory.  In addition, the evidence presented showed that plaintiff made a number of attempts to report to work, which shows that he was not an active participant in the work stoppage as alleged in the first charge.  Also,

plaintiff was found guilty without any competent evidence to substantiate guilt and was punished in violation of his Eight Amendment rights. Furthermore, plaintiff was left in punitive segregation in Bent County Correctional Facility for sixty days in spite of receiving just twenty days in punitive segregation.

**Claim Three.** Plaintiff was arbitrarily denied due process and equal protection. Plaintiff had a legitimate expectation based on state law and protected by the Due Process Clause and Equal Protection clause that he would be given a reasonably accurate summary of confidential information at least 24 hours prior to his hearing, that the confidential information would be taken under oath, that it would be recorded on audio tape or by sworn statement in confidence by the hearing officer, that it would be evaluated by the hearing officer to determine reliability, and that the findings would be recorded either verbally or in writing. When Adkins presented the confidential testimony at the hearing, Ritter permitted the admission of that testimony, and Robinette knowingly upheld Ritter's findings on appeal in the face of substantially clear procedural violations and for fabricated reasons unsupported by the record, they denied plaintiff equal protection particularly where every other inmate is afforded every procedural right.

Plaintiff seeks compensatory and punitive damages, costs, and attorney fees.

**Defendants' Motion to Dismiss**

Now before the court for a report and recommendation is the defendants' Motion to Dismiss (Docket No. 15) with a Memorandum Brief in Support of Motion to Dismiss (Docket No. 16) in which defendants seek dismissal pursuant to Fed. R. Civ. P.

12(b)(1) and (6).  Plaintiff has not filed a response to this motion.

Rule 12(b)(1):

empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear.  *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994).  Statutes conferring jurisdiction on federal courts are to be strictly construed.  *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms.  First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true.  *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact.  *See id.* at 1003.  A court's consideration of evidence outside the pleadings will not convert the motion to dismiss to a motion for summary judgment under Rule 56.  *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d 1091, 1094-95 (D. Colo. 2001).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A

complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" <u>Cutter v. RailAmerica, Inc.</u>, 2008 WL 163016 (D. Colo. Jan. 15, 2008) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp.</u>, 127 S. Ct. at 1974 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting <u>Bell Atlantic Corp.</u>, 127 S. Ct. at 1974).

Since the plaintiff is proceeding without counsel, his pleading has been construed liberally and held to a less stringent standard than formal documents drafted by lawyers. <u>See</u> <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his

poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

Defendants seeks dismissal on the following grounds: (1) plaintiff's due process claim pursuant to 42 U.S.C. § 1983 fails as a matter of law because the sanctions imposed as a result of the disciplinary conviction are too insignificant to merit federal judicial review; (2) plaintiff fails to state an equal protection claim; (3) plaintiff fails to state an Eighth Amendment violation; (4) plaintiff's claims are barred by the Prison Litigation Reform Act ("PLRA") because he has failed to allege a personal injury and failed to exhaust his administrative remedies; (5) defendants are entitled to qualified immunity; and (6) plaintiff's claims are barred by the applicable statute of limitations. These arguments are addressed below.

### Due Process Claim

Defendants assert that the plaintiff's due process claim fail as a matter of law. In Sandin v. Conner, 515 U.S. 472 (1995), the United States Supreme Court "redefined the scope of prisoner due process claims and clarified the proper approach for their analysis." Klein v. Coblentz, 1997 WL 767538 (10th Cir. Nov. 19, 1997). The Court noted in Sandin that although

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause . . . [those] interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin, 515 U.S. at 483-84.

The discipline imposed upon the plaintiff in the instant case was 20 days in segregation and 20 days of lost good time credits.  (Docket No. 3 at 15).  It may very well be that such a sanction does not "inevitably affect" the duration of plaintiff's confinement or impose an "atypical and significant hardship in relation to the ordinary incidents of prison life."  Id.  In fact, plaintiff's disciplinary segregation sentence is less than the 30-day sentence imposed upon the Sandin plaintiff.  See Montgomery v. El Paso County Sheriff's Dep't, 1998 WL 104721 (10th Cir. Mar. 10, 1998) (Plaintiff did not demonstrate that his placement in disciplinary segregation for 30 days and loss of good time credits was an atypical and significant hardship or inevitably affected the duration of his sentence.); Klein v. Coblentz, 1997 WL 767538, **3 (Plaintiff was sentenced to 30 days in disciplinary segregation, loss of 45 days of good time credits, and subsequent placement in administrative segregation.  In that civil rights action, pursuant to Sandin, the Tenth Circuit found that no due process issues were raised.).  Even 60 days of segregation does not necessarily impose an "atypical and significant hardship in relation to the ordinary incidents of prison life."  See Scott v. Crowley County Correctional Facility, 2003 WL 22093917 (10th Cir. Sept. 10, 2003) (65 days in segregation).  Therefore, plaintiff "faces an uphill battle in establishing" a due process claim."  Gaines v. Stenseng, 292 F.3d 1222, 1225  (10th Cir. 2002).

Nevertheless, in Sandin, the Court carefully examined the conditions of the plaintiff's confinement and determined that his disciplinary segregation "mirrored those conditions imposed upon inmates in administrative segregation and protective

custody." <u>Sandin</u>, 515 U.S. at 486. Here, however, the Prisoner Complaint provides no specifics concerning the conditions of plaintiff's confinement in segregation or anything about how plaintiff's situation was atypical to enable this court to engage in an examination of the typical conditions of confinement at the facility where he was held in disciplinary segregation. While it may very well be that "the court might properly conclude at the summary judgment stage that there is sufficient evidence to establish that such segregation mirrors conditions imposed upon inmates in administrative segregation and protective custody, and that therefore the complaint should be dismissed," <u>Gaines</u>, 292 F.3d at 1226, it would be inappropriate "to dismiss the claim at this stage in the litigation without the benefit of any such evidence." <u>Id.</u>[1]

Defendants, however, correctly assert that the plaintiff's loss of good time credits does not give rise to a right to due process of law. There is no constitutional right to be released before a valid sentence expires, <u>Klein v. Coblentz</u>, 1997 WL 767538, **3 (10th Cir. Nov. 19, 1997) (citing <u>Greenholz v. Inmates of Neb. Penal & Correctional Complex</u>, 442 U.S. 1, 7 (1979)), and the grant of parole is discretionary. <u>Id.</u> Furthermore, "[a] Colorado inmate has no constitutional right to good time credit, <u>see</u> <u>Kodama v. Johnson</u>, 786 P.2d 417, 419 (Colo. 1990) (en banc), even though 'the accumulation of

_____

[1]The court notes that the holding in <u>Gaines</u> was limited to the length of the 75-day disciplinary segregation and that the court noted that "[d]isciplinary segregation for some lesser period could fail as a matter of law to satisfy the 'atypical and significant' requirement in a case in the future, thereby making it futile to allow the pro se plaintiff to amend his complaint." <u>Gaines</u>, 292 F.3d at 1226. Here, while plaintiff's disciplinary sentence was just 20 days, he alleges that he was held in such confinement for 60 days. Therefore, the court will follow the holding in <u>Gaines</u> at this stage of the litigation.

good time credits serves the purpose of determining an inmate's parole eligibility date.' People v. Swepston, 822 P.2d 510, 512 (Colo. Ct. App. 1991). Good time credits do not count toward sentence reduction." Klein v. Coblentz, 1997 WL 767538, **4. See Lusero v. Welt, 223 Fed. Appx. 780 (10th Cir. Mar. 27, 2007). Therefore, plaintiff's due process claims concerning his loss of good time credits should be dismissed.

### Equal Protection Claim

Defendants correctly assert that the plaintiff has failed to state an equal protection claim. "The Equal Protection Clause requires the government to treat similarly situated people alike. . . . In order to assert a viable equal protection claim, plaintiff[] must first make a threshold showing that [he was] treated differently from others who were similarly situated to [him]." Barney v. Pulsipher, 143 F.3d 1299, 1312 (10th Cir. 1998). Here, plaintiff does not identify any similarly-situated inmate or inmates treated differently. See Smith v. Ortiz, 2006 WL 620871, at *3 (10th Cir. Mar. 14, 2006) (copy attached to Defs.' Memo., Docket No. 16-2). See also Hernandez v. Soares, 2006 WL 2050990, at *6 (D. Colo. July 20, 2006) (Civil Action No. 02-cv-01495-MSK-BNB). Therefore, it is recommended that plaintiff's Equal Protection claim be dismissed.

### Eighth Amendment Claim

Defendants assert that the plaintiff's Eighth Amendment claim fails as a matter of law. Plaintiff's Eighth Amendment claim appears to be based, at least in part, on his having been kept in punitive segregation for 60 days, which was longer than the 20 days imposed as a disciplinary sanction. Once again, however, the Prisoner Complaint

provides no specifics concerning the conditions of his confinement in segregation. Nevertheless, this court finds below that to the extent plaintiff does raise an Eighth Amendment claim, it is time-barred. Therefore, it is recommended that the claim be dismissed.

### Qualified Immunity

Defendants assert that they are entitled to qualified immunity. When a defendant raises a qualified immunity defense, the plaintiff "bears the burden of showing that: (1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right." Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001).

In this case, relying on their arguments in their motion concerning plaintiff's due process, Equal protection, and Eighth Amendment claims, defendants assert that plaintiff has failed to establish a violation of his constitutional rights. Based upon the findings above, however, at this stage of the litigation with the record before it, this court cannot make a finding concerning whether the defendants' conduct violated a constitutional right.

Defendants next assert that "[a]ssuming arguendo that [plaintiff] sufficiently alleged a violation of his rights, 'the next step is to ask whether the right was clearly established.'" (Docket No. 16 at 14). The Supreme Court, however, has instructed that "[a] court required to rule upon the qualified immunity issue **mus**t consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury,

do the facts alleged show the officer's conduct violated a constitutional right?  This

**must** be the initial inquiry."  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) (emphasis

added).  <u>See</u> <u>Brosseau v. Haugen</u>, 543 U.S. 194, 197 (2004).  According to the Court, it

is important that the court concentrate at the outset on the definition of the

constitutional right and to determine whether, on the facts alleged, a constitutional

violation could be found because:

> [i]n the course of determining whether a constitutional right was violated
> on the premises alleged, a court might find it necessary to set forth
> principles which will become the basis for a holding that a right is clearly
> established.  This is the process for the law's elaboration from case to
> case, and it is one reason for our **insisting** upon turning to the existence
> or nonexistence of a constitutional right as the first inquiry.  The law might
> be deprived of this explanation **were a court simply to skip ahead to
> the question whether the law clearly established that the [official's]
> conduct was unlawful in the circumstances of the case**.

<u>Saucier</u>, 533 U.S. at 201 (emphasis added).  In <u>Brosseau v. Haugen</u>, the Court noted

that they had "no occasion in [that] case to reconsider [their] instruction in <u>Saucier</u> . . .

that lower courts decide the constitutional question prior to deciding the qualified

immunity question. . . ."  <u>Brosseau</u>, 543 U.S. at 198 n.3.  <u>See</u> <u>Maestas v. Lujan</u>, 351

F.3d 1001, 1007 (10th Cir. 2003) ("Order is important; we must first decide whether the

plaintiff has alleged a constitutional violation, and only then do we proceed to

determine whether the law was clearly established.").  Therefore, based upon the

Supreme Court's instruction, and based upon this court's findings above, it is

recommended that the defendants' motion to dismiss, to the extent it concerns qualified

immunity, be denied without prejudice.

### Claims of Violations of §§ 1985 and 1986

Although not raised by the defendants in their dispositive motion, this court notes that the plaintiff has made no allegations of race or class-based animus and thus has failed to state a claim under § 1985. Bisbee v. Bey, 39 F.3d 1096, 1102 (10th Cir. 1994). Since a § 1986 claim is premised upon the existence of a valid § 1985 claim, plaintiff's § 1986 claim also fails. See Abercrombie v. City of Catoosa, Okl., 896 F.2d 1228, 1230 (10th Cir. 1990). See Neitzke v. Williams, 490 U.S. 319, 325 (1989) (district courts may dismiss complains on frivolousness grounds under § 1915 where the plaintiff claims infringement of a legal interest which clearly does not exist). Plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." Cutter v. RailAmerica, Inc., 2008 WL 163016 (D. Colo. Jan. 15, 2008).

**Failure to Allege a Physical Injury**

Defendants assert that the plaintiff's claims are barred by 42 U.S.C. § 1997e(e) which provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Defendants note that the plaintiff seeks compensatory and punitive damages for alleged "personal humiliation, mental anguish and emotional distress." (Docket No. 3 at 13). Because plaintiff does not allege any physical injury, he cannot receive compensatory damages for any emotional harm caused by the alleged civil rights violation. 42 U.S.C. § 1997e(e). Not all of his claims, however, must be dismissed on this basis. See Baughman v. Saffle, 24 Fed. Appx. 845, at *2 n.2 (10th Cir. Oct. 17, 2001) (citing Searles v. Van Bebber, 251 F.3d 869, 875-76, 878-80 (10th Cir. 2001)) (plaintiff can recover nominal and punitive

damages if the trier of fact concludes that his constitutional rights were violated); <u>Brack</u> <u>v. Ortiz</u>, 2007 WL 867992, at *17 n.11 (D. Colo. Mar. 20, 2007) ("While a claim for compensatory damages would clearly be barred in the absence of any showing of physical injury, it is not clear that a claim for either punitive or nominal damages would also be barred. . . .  Nominal damages, for instance, are available for the violation of certain 'absolute' constitutional rights, such as due process, without any showing of actual injury." . . .); <u>Slusher v. Samu</u>, 2006 WL 3371636 (D. Colo. Nov. 21, 2006) (plaintiff's claims for compensatory damages limited to the claim where physical injury is alleged to have been caused by the alleged constitutional violation).  Therefore, plaintiff's claim for compensatory damages fails as a matter of law pursuant to the PLRA, and it is recommended that such claim be dismissed.[2]

**<u>Failure to Exhaust</u>**

The PLRA, *inter alia*, amended 42 U.S.C. § 1997e(a) to require a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions.  This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it."  <u>Beaudry v. Corrections Corp. of Am.</u>, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003).  Section "1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences."  <u>Porter v. Nussle</u>, 534 U.S. 516, 520 (2002).  "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."

---

[2]In Colorado, as a matter of law, nominal damages are one dollar.  <u>Colorado Inv.</u> <u>Servs., Inc. v. Hager</u>, 685 P.2d 1371, 1375 (Colo. Ct. App. 1984).

Id. at 524 (citing Booth v. Churner, 532 U.S. 731, 741 (2001)). The Supreme Court has stated: "[W]e stress the point . . . that we will not read futility or other exceptions into [the PLRA's] statutory exhaustion requirement." Booth, 532 U.S. at 741, n.6. "In Booth, the Supreme Court explained that one of the purposes of the exhaustion requirement is to force an inmate to go through the administrative process which in turn might afford prison officials the opportunity to take some corrective action that would preclude litigation." Beaudry, 331 F.3d at 1167.

"[T]he failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 127 S. Ct. 910, 921 (2007). As an affirmative defense, exhaustion must be raised and proven by the defendants. Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007). "[O]nly in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse." Freeman v. Watkins, 479 F.3d 1257, 1260 (10th Cir. 2007) (quoting Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007)). "Jones suggests that district courts can dismiss prisoner complaints for failure to state a claim if it is clear from the face of the complaint that the prisoner has not exhausted his administrative remedies." Aquilar-Avellaveda, 478 F.3d at 1225.

Here, defendants note that the CDOC has an administrative grievance process set forth in its regulations. See CDOC Administrative Regulation 850-4 (Docket No. 16 at 16-3). Defendants note that in the Prisoner Complaint plaintiff states:

> Disciplinary proceedings are exhausted through the appeal process only and cannot be addressed through the grievance process. Additionally, the matter was properly exhausted through CRCP Rule [sic] 106(a)(4) - the only proper vehicle to challenge the validity of the disciplinary process.

(Docket No. 3 at 12). Defendants further correctly note that the grievance regulation expressly provides that the "grievance procedure may not be used to seek review of COPD convictions. . . ." (Docket No. 16-3 at 3, § IV, B, 1, (l)). Defendants, however, assert that plaintiff does not seek review of the validity of his disciplinary conviction (which defendants admit is not grievable pursuant to the DOC grievance procedure and is reviewable in state court) but instead seeks damages for the alleged constitutional violations. Defendants contend that alleged violations of constitutional rights, and the purported damages flowing therefrom, are reviewable through the grievance procedure. They further assert that plaintiff's confusion relating to the grievability of the issues contained in his Complaint does not relieve him of his obligation to exhaust administrative remedies before filing this case. Therefore, defendants assert that plaintiff's claims are barred because he failed to exhaust administrative remedies.

This court, however, disagrees with the defendants and finds that the language of the administrative regulation quoted above precluded plaintiff from filing a grievance concerning the disciplinary proceeding at issue. Furthermore, plaintiff followed the only course of action to seek review of that proceeding, namely, his administrative appeal and his action in state court via Rule 106(a)(4) of the Colorado Rules of Civil Procedure. Therefore, this court recommends that plaintiff's due process claim not be dismissed on the basis of failure to exhaust.

The plaintiff's state action, however, concerned plaintiff's disciplinary proceedings. They did not concern his Eighth Amendment claim that is based, at least in part, upon his being held in disciplinary segregation 40 days longer than his disciplinary sanction. Therefore, it may very well be that plaintiff has not exhausted his Eighth Amendment claim. Defendants, however, have the burden of showing failure to exhaust. At this time, there is no evidence that plaintiff has failed to exhaust his Eighth Amendment claim. Therefore, dismissal of that claim for failure to exhaust cannot be recommend at this time.

**Statute of Limitations**

Defendants assert that the allegations of the Complaint dictate that this case was not timely filed. The Supreme Court has instructed that "§ 1983 claims are best characterized as personal injury actions," and, therefore, the relevant state statute of limitations applicable to such actions is applied. Hunt v. Bennett, 17 F.3d 1263, 1265 (10th Cir. 1994) (citing Wilson v. Garcia, 471 U.S. 261, 280 (1985)). Colorado's general two-year statute of limitations for personal injury actions, § 13-80-102, C.R.S., thus applies to this case. Smith v. Ortiz, 2006 WL 620871, *4 (10th Cir. Mar. 14, 2006). "That limitations period begins to run when the cause of action accrues according to federal law. . . . 'A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.' . . . A § 1983 cause of action therefore accrues 'when the plaintiff knows or should know that his or her constitutional rights have been violated.'" Id.

Here, defendants note that the gravamen of the plaintiff's claim is that he was

denied Constitutional rights when he was convicted of a disciplinary violation in 2003,

and they contend that plaintiff was aware of the alleged constitutional violations at the

time of the conviction. Therefore, defendants assert that the two-year statute of

limitations began to run at that time, yet plaintiff did not file his complaint until August

31, 2006, which was more than three years after the conviction occurred. Therefore,

defendants assert that plaintiff's claim is time-barred.

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court addressed the

question of when a prisoner may bring a section 1983 claim relating to his conviction or

sentence. The Court held that

> when a state prisoner seeks damages in a § 1983 suit, the district court
> must consider whether a judgment in favor of the plaintiff would
> necessarily imply the invalidity of his conviction or sentence; if it would,
> the complaint must be dismissed unless the plaintiff can demonstrate that
> the conviction or sentence has already been invalidated. But if the district
> court determines that the plaintiff's action, even if successful, will *not*
> demonstrate the invalidity of any outstanding criminal judgment against
> the plaintiff, the action should be allowed to proceed, in the absence of
> some other bar to suit.

Id. at 487 (footnotes omitted). Based upon this language, the Tenth Circuit has stated

that "for § 1983 claims necessarily challenging the validity of a conviction or sentence,

Heck delays the rise of the cause of action until the conviction or sentence has been

invalidated. Because the cause of action does not accrue until such time, the

applicable statute of limitations does not begin to run until the same time." Beck v. City

of Muskogee Police Dep't, 195 F.3d 553, 556-57 (10ᵗʰ Cir. 1999).

In Beck, the Tenth Circuit did not agree with the district court's blanket

application of Heck to all of the plaintiff's claims. Id. The circuit court stated that "Heck

applies only to those claims that would necessarily imply the invalidity of any conviction that might have resulted from prosecution of the dismissed . . . charge or the invalidity of his probation revocation. Not all of them do. **Each of Beck's claims must be assessed individually to determine whether it has yet matured, and if so, when it matured for purposes of applying the statute of limitations.**" Id. (emphasis added). The Tenth Circuit noted in Beck that "[c]laims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur." Id. at 558 (citing Johnson v. Johnson County Comm'n Bd., 925 F.2d 1299, 1301 (10th Cir. 1991)).

In this case, the plaintiff's success on his due process claims would implicate the validity of his disciplinary conviction. See Edwards v. Balisok, 520 U.S. 641 (1997) (The nature of the prisoner's challenge concerning his prison disciplinary hearing implicated the invalidity of the disciplinary conviction. The prisoner stated no cognizable § 1983 claim unless and until the underlying disciplinary conviction was resolved in the prisoner's favor.). Plaintiff, however, brought an action in state court, and on April 25, 2006, the state District Judge ruled that "[t]he final order of the COPD hearing Officer is set aside. The [CDOC] is ordered to expunge the COPD conviction." (Docket No. 3 at 21). Therefore, this court finds that the plaintiff's claim did not accrue until the state court issued its ruling in April 2006, and thus plaintiff's due process claims concerning the disciplinary conviction are not time-barred inasmuch as this action commenced six months later in October 2006.

However, to the extent plaintiff raises a separate Eighth Amendment claim, it

would be time barred because plaintiff's claim would have accrued in 2003 when he was in disciplinary confinement.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Defendants' Motion to Dismiss (Docket No. 15) be granted in part and denied in part.  More specifically, it is recommended that the motion be granted to the extent that the following claims be dismissed: plaintiff's due process claims concerning his loss of good time credits, Equal Protection claims, Eighth Amendment claims, claims pursuant to 42 U.S.C. §§ 1985 and 1986, and claim for compensatory damages.  In all other respects, it is recommended that the defendants' motion be denied without prejudice.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  February 26, 2008                              s/ Michael J. Watanabe
        Denver, Colorado                              Michael J. Watanabe
                                                      United States Magistrate Judge