IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-02096-MEH-MJW

PATRICK DURAY PORTLEY-EL,

      Plaintiff,

v.

ROBERT STEINBECK, individually,
TIMOTHY RITTER, individually,
CURTIS ROBINETTE, individually, and
S. ADKINS, individually,

      Defendants.

---

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

---

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court are Defendants' Motion for Summary [filed February 26, 2009; docket #102] and Plaintiff's Petition (Motion) for Summary Judgment [filed March 18, 2009; docket #110]. By Order of Reference to United States Magistrate Judge, these motions have been referred to me pursuant to 28 U.S.C. § 636(c). Docket #70. The motions are fully briefed, and the Court orders that, for the reasons stated herein, the Defendants' motion is **granted** and the Plaintiff's motion is **denied**.

**BACKGROUND**

**I.    Findings of Fact**

At the time of the incidents raised in the Complaint, Plaintiff Patrick Duray Portley-El was incarcerated at the Arkansas Valley Correctional Facility ("AVCF"). During a disciplinary hearing at AVCF on July 24, 2003, the facility's disciplinary officer, Defendant Adkins, read the allegations contained in a Notice of Charges which alleged that on July 8, 2003, at approximately 10:00 a.m.,

Defendant Steinbeck received confidential information from several sources who presented corroborating evidence that the Plaintiff was an active participant in a facility work stoppage on July 7, 2003, and that Tom Grebenc reported that the Plaintiff did not report to work on July 7, 2003, at approximately 8:21 a.m.  Adkins also added that Plaintiff was an enforcer in threatening other inmates.  As a result of the above, Plaintiff was charged with two COPD violations: Advocating/Creating Facility Disruption, a Class II Rule 16 violation; and Failure to Work, a Class II Rule 22 violation.  Plaintiff objected that he had not received prior notice of the allegation that he was an "enforcer" because he did not have enough time to prepare for such allegation. The hearing officer, Defendant Ritter, however, proceeded with the hearing after concluding that Plaintiff did not have a right to receive confidential information prior to his hearing.

Plaintiff was given an opportunity to present his side of the matter, and he explained that he did report to work, but staff refused to allow him to work because there was no movement and the unit was on lock-down for security reasons. In addition, Plaintiff explained that after learning of several beatings, Plaintiff stood in the middle of his pod and yelled that if anyone jumped on any Blacks for going to work, they would have problems with him.

Ritter found Plaintiff not guilty of Failure to Work but guilty of Advocating/Creating Facility Disruption based on the written statement of Steinbeck in the Notice of Charges and on Plaintiff's testimony, construed by Ritter as "If anyone touches a Black, they will have to deal with me."  Ritter made no determinations concerning the reliability of the confidential information.  Plaintiff received a sentence of 20 days' punitive segregation and 20 days' loss of good time credit.

Plaintiff appealed, citing a procedural violation with respect to confidential information, inconsistent findings of fact, and an "absurd" interpretation of his statement.  On August 8, 2003, Defendant Robinette upheld Ritter's determination of guilt, finding that there were no procedural

2

violations and that the confidential information had been determined to be reliable.

On October 8, 2003, Plaintiff filed a Rule 106(a)(4) motion in Crowley County District Court. On April 25, 2006, the state court found there was no competent evidence to support the hearing officer's decision. Therefore, Ritter's findings were set aside and the conviction was expunged.

## II. Procedural History

Plaintiff initiated this action on October 20, 2006, raising three claims for relief in his Complaint and seeking compensatory and punitive damages, along with attorney's fees and costs.[1] *See* docket #3. On March 14, 2008, Judge Krieger adopted the recommendation of Magistrate Judge Watanabe to dismiss all claims except for Plaintiff's claim that he was deprived of a liberty interest - namely, his confinement to disciplinary segregation - without due process in violation of 42 U.S.C. § 1983. Docket #34. In such claim, the Plaintiff alleges he was denied due process when he endured punitive segregation for sixty days without a procedurally-proper hearing and without competent evidence to find guilt and impose punishment. Analyzing the due process claim pursuant to *Sandin v. Conner*, 515 U.S. 472 (1995), Magistrate Judge Watanabe noted the following:

> Even 60 days of segregation does not necessarily impose an "atypical and significant hardship in relation to the ordinary incidents of prison life." *See Scott v. Crowley County Correctional Facility*, 2003 WL 22093917 (10th Cir. Sept. 10, 2003) (unpublished) (65 days in segregation). Therefore, plaintiff "faces an uphill battle in establishing" a due process claim." *Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002).
>
> Nevertheless, in *Sandin*, the Court carefully examined the conditions of the plaintiff's confinement and determined that his disciplinary segregation "mirrored those conditions imposed upon inmates in administrative segregation and protective custody." *Sandin*, 515 U.S. at 486. Here, however, the Prisoner Complaint provides no specifics concerning the conditions of plaintiff's confinement in segregation or anything about how plaintiff's situation was atypical to enable this court to engage

---

[1]In his Complaint, the Plaintiff does not seek restoration of his good time credits, a claim properly brought in an Application for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.

3

> in an examination of the typical conditions of confinement at the facility where he was held in disciplinary segregation. While it may very well be that "the court might properly conclude at the summary judgment stage that there is sufficient evidence to establish that such segregation mirrors conditions imposed upon inmates in administrative segregation and protective custody, and that therefore the complaint should be dismissed," *Gaines*, 292 F.3d at 1226, it would be inappropriate "to dismiss the claim at this stage in the litigation without the benefit of any such evidence." *Id.*

Docket #33 at 9-10. In light of the previous rulings in this case, then, the Court will focus its analysis on determining whether any genuine issues of material fact exist concerning whether Plaintiff's punitive segregation imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 483-84.

## DISCUSSION

### I. Standard of Review

Summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Id.* at 323; *Maldonado v. City of Altus*, 433 F.3d 1294, 1302 (10th Cir. 2006).

If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. *Hysten v. Burlington Northern and Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1256 (10th Cir. 2005).

## II. Defendants' Motion for Summary Judgment

Defendants contend that Plaintiff has not raised genuine issues of material fact with respect to his only remaining claim - confinement to disciplinary segregation without due process. This claim is governed by the Supreme Court's opinion in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), which found that due process liberty interests created by state regulations are "generally limited to freedom from restraint that imposes an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life." The *Sandin* Court expanded upon its analysis in *Wolff v. McDonnell*, 418 U.S. 539 (1974) to determine whether the Due Process Clause afforded an inmate, who received 30 days in punitive segregation following a disciplinary hearing, a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff*. *Id.* at 483-484.

Following *Sandin*, the Supreme Court confirmed that an examination of prison rules or

regulations themselves is no longer an appropriate method for ascertaining the existence of a liberty interest; rather, courts must look to the conditions of confinement to determine whether the inmate has suffered a "hardship" as set forth in *Sandin*. *See Wilkinson v. Austin*, 545 U.S. 209, 221-23 (2005); *see also Estate of Miki Ann DiMarco v. Wyoming Dep't of Corrections*, 473 F.3d 1334, 1339 (10th Cir. 2007) ("[s]tate policies or regulations will not create the basis for a liberty interest in the conditions of confinement so long as they do not impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). In fact, in Colorado, state laws and regulations themselves do not entitle inmates to remain in the general population absent certain conduct. *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994).

Under *Sandin* and its progeny, then, a right to due process in a disciplinary hearing arises only when the punishment imposes an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life or when it will inevitably affect the duration of a sentence. *See Sandin*, 515 U.S. at 484, 487. Thus, the first question to answer is whether an inmate's punishment imposed following a disciplinary hearing gives rise to a right to due process in the hearing under the Fourteenth Amendment.

In this case, to prove that he suffered a due process violation, the Plaintiff must demonstrate that the sanctioned restraint - here, 60 days in punitive segregation[2] - imposed an atypical and

---

[2] As stated above, Plaintiff received a sentence of 20 days in punitive segregation and the loss of 20 days of good time credits. Even had the Plaintiff brought a claim for restoration of the credits pursuant to 28 U.S.C. § 2241, the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Notably, a liberty interest may arise under certain circumstances if created by the State in which the prisoner is housed. *Id.*; *see also Sandin*, 515 U.S. at 483-84. However, in Colorado, an inmate does not have a constitutional right to good time credit. *Kodama v. Johnson*, 786 P.2d 417, 419 (Colo. 1990) (en banc). Accordingly, Judge Krieger (as recommended by Magistrate Judge Watanabe) dismissed Plaintiff's due process claim (liberally construed) concerning the loss of good time credits. *See* docket #33 at 10-11.

Plaintiff does not argue that his loss of good time credits "inevitably affects the duration of [his] sentence." *See Sandin*, 515 U.S. at 487; *see also Klein v. Coblentz*, 1997 WL 767538, *4 (10th

significant hardship on him in relation to the ordinary incidents of prison life. For purposes of this motion, however, the Plaintiff need only establish a genuine issue as to any material fact whether he suffered the "hardship" defined in *Sandin* and, thus, whether he gained a right to due process protections during his disciplinary hearing.

### A. What Constitutes a "Hardship"?

Following *Sandin*, the Tenth Circuit held that, at the summary judgment stage, a district court must carefully examine the conditions (degree) of the prisoner's confinement in punitive segregation (*i.e.*, whether such conditions mirror those in administrative segregation and protective custody) and must determine whether the duration of confinement is itself atypical and significant. *See Gaines v. Stenseng, et al.*, 292 F.3d 1222, 1226 (10th Cir. 2002).

A "significant and atypical hardship" sufficient to create a liberty interest appears to this Court to be one that is of substantial degree and duration. For example, the Supreme Court determined that the government created a liberty interest subject to due process protections when officials placed an inmate *indefinitely* in a super-max prison where almost all human contact was prohibited and which made the inmate ineligible for parole. *Wilkinson*, 545 U.S. at 224. Moreover, the Tenth Circuit found that an inmate's allegations that, for a three-year period, he was confined to his cell for all but five hours each week and denied access to any outdoor recreation arguably implicated procedural due process concerns. *See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006).

With these legal principles in mind, the Court will analyze whether Plaintiff has demonstrated a genuine issue of material fact as to whether his punishment was of sufficient

---

Cir. Nov. 19, 1997). Even if he had, however, the Tenth Circuit has determined that "[g]ood time credits do not count toward sentence reduction." *Id.* Thus, the loss of 20 days of good time credits does not give rise to a right to due process.

duration and degree to create a liberty interest pursuant to *Sandin* and its progeny.

    1.    *Duration*

In *Sandin*, the Supreme Court determined that the inmate's confinement in punitive segregation (with insignificant exceptions) mirrored the conditions imposed on inmates in administrative segregation and protective custody and, thus, did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction. *Sandin*, 515 U.S. at 486. As such, the inmate's punitive confinement of 30 days did not present the type of atypical, significant deprivation in which a State might create a liberty interest. *Id.*

In *Gaines*, the Tenth Circuit noted that "[d]isciplinary segregation for some lesser period [than seventy-five days] could fail as a matter of law to satisfy the 'atypical and significant' requirement in a case in the future, thereby making it futile to allow the *pro se* plaintiff to amend his complaint." *Gaines*, 292 F.3d at 1296. In fact, in a case similar to the case at bar, the Tenth Circuit found no due process claim for which an inmate received ninety (90) days of punitive segregation following a disciplinary hearing that left him without store privileges, radio, and telephone calls that other inmates in segregation enjoyed. *See Blum v. Federal Bureau of Prisons*, 1999 WL 638232, *3 (10th Cir. Aug. 23, 1999) (unpublished).

In this case, the Court notes that the 20-day punitive segregation sentence imposed upon Plaintiff itself likely fails to rise to the atypical and significant hardship required by *Sandin* and *Gaines*. However, the Plaintiff asserts, and Defendants do not dispute, that he was left in punitive segregation for a total of 60 days. Therefore, the Court will continue its analysis of the degree (or conditions) of Plaintiff's confinement to determine whether it creates a liberty interest.

    2.    *Degree*

Here, according to Defendants, all administrative segregation, punitive segregation, and

removal from population inmates are given the same educational services, recreation, medical access, visitation, library access, mail, newspaper access, personal property, and religious property and services, laundry services, attorney phone calls, property, and prison canteen access. *See* Exhibit E, Affidavit of Larry Cox, Chief of Security at Bent County Correctional Facility at ¶4; and Attachment 1 thereto, BCCF Conditions of Segregation Chart. Defendants contend that the only difference in the conditions of administrative segregation, punitive segregation and removal from population is that administrative segregation and closed custody inmates are allowed an initial five-minute telephone call to their family or friends to notify them that they will be in segregation, and then are allowed one twenty-minute call per day. Punitive segregation inmates and inmates removed from population are allowed an initial five-minute telephone call to their family or friends to notify them that they will be in segregation and then are allowed a twenty-minute call per week. *See id.* at ¶5 and Attachment 1 thereto.

Plaintiff does not dispute the number of privileges allowed inmates in punitive segregation, but responds that administratively segregated inmates are allowed more privileges than those in punitive segregation including televisions and/or radios in their cells, additional phone calls, additional recreation time, daily showers, and additional canteen privileges. The Plaintiff does not describe the number, substance or degree of any of the "additional" privileges for which he was allegedly deprived. Plaintiff also argues that the comparison should not be made between punitive and administrative segregation, but rather between punitive segregation and the general population.

To answer the Plaintiff's latter proposition, the Tenth Circuit has developed four factors that may be relevant in determining the appropriate baseline comparison and how significant the deviation from the baseline the conditions of confinement must be to create a liberty interest: (1) whether the segregation relates to and furthers a legitimate penological interest, such as safety or

rehabilitation; (2) whether the conditions of placement are extreme; (3) whether the placement increases the duration of confinement as it did in *Wilkinson*; and (4) whether the placement is indeterminate. *Estate of DiMarco*, 473 F.3d at 1342. Any assessment of these factors must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts. *Id.* (citing *Sandin*, 515 U.S. at 482-484).

Applying the factors to the matter at hand, the Court first concludes that the imposition of 20 days' punitive segregation at the time of the guilty finding for Advocating or Creating a Facility Disruption furthered the legitimate penological interests of safety and rehabilitation. Next, it is undisputed that Plaintiff's placement in punitive segregation was for a determined time and did not increase the duration of his sentence. Finally, considering the analyses of the degree of punitive confinement in *Sandin*, *Wilkinson*, *Fogle*, *Gaines* and *Blum*, the Court finds that 60 days in punitive segregation at the Bent County Correctional Facility, including the lost privileges described by Plaintiff, is not extreme and does not present the type of atypical, significant deprivation for which a state might create a liberty interest.

The Plaintiff argues in his response that the issue in this case is not whether the time he spent in segregation was significant or atypical, but whether, under *Wolff v. McDonnell*, he suffered due process violations at the disciplinary hearing. However, as noted above, the *Sandin* court expanded upon its ruling in *Wolff* to determine first whether the punishment an inmate receives actually gives rise to an entitlement to the due process protections set forth in *Wolff*. Plaintiff fails to acknowledge this critical first step to establishing whether he has demonstrated a due process violation.

Thus, even drawing all inferences in the light most favorable to him, I find that Plaintiff has failed to show any genuine issue of material fact against Defendants that would justify permitting this case to proceed to trial. Because the Court concludes that Plaintiff fails to demonstrate that he

enjoyed a liberty interest in procedural due process protections at his disciplinary hearing, I need not reach the question of whether Defendants are entitled to qualified immunity. *See Estate of DiMarco*, 473 F.3d at 1345.

### III.    Plaintiff's Motion for Summary Judgment

In his motion, the Plaintiff argues that he was denied a fair procedure with respect to the disciplinary hearing and his subsequent segregation when he was not provided adequate information in his Notice of Charges (*i.e.*, disclosure of confidential information), when the Defendants violated Code of Penal Discipline ("COPD") rules and regulations by considering the confidential information without informing the Plaintiff of the general substance of the information and without reviewing the information for its reliability, and when the Plaintiff was left in punitive segregation longer than his imposed sentence of 20 days. Defendants counter that Plaintiff has failed to demonstrate he is entitled to due process protections in his disciplinary hearing and, thus, can show no due process violation.

As set forth above, the Plaintiff must first establish that he has an entitlement to due process protections before he can assert a violation of the Due Process Clause. *See Sandin*, 515 U.S. at 484; *see also Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) ("[w]e examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with the State . . .; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient") (citations omitted).

Pursuant to an analysis of *Sandin* and its progeny, the Court has found that Plaintiff fails to establish a genuine issue of material fact as to whether he was entitled to due process protections in his disciplinary hearing. The punitive segregation imposed upon Plaintiff, whether it was 20 days or an additional 40 days at the Bent County Correctional Facility, does not rise to the level of an

11

atypical and significant hardship on the Plaintiff in relation to the ordinary incidents of prison life. Thus, the 60-day segregation did not present the type of deprivation described by *Sandin* in which Colorado, through its Code of Penal Discipline or otherwise, might create a liberty interest, and the Plaintiff has failed to demonstrate that he suffered a due process violation.

## CONCLUSION

Plaintiff has failed to demonstrate a genuine issue of material fact as to whether he suffered a violation of the Due Process Clause in this matter; therefore, the Court hereby ORDERS that Defendants' Motion for Summary [filed February 26, 2009; docket #102] is **granted** and Plaintiff's Petition (Motion) for Summary Judgment [filed March 18, 2009; docket #110] is **denied**. Plaintiff's remaining claim against Defendants is **dismissed with prejudice**.

Dated at Denver, Colorado this 10th day of June, 2009.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge